UNITED STATES, Appellee

v.

Timothy E. BENNITT, Private
U.S. Army, Appellant

No. 12-0616

Crim. App. No. 20100172

United States Court of Appeals for the Armed Forces

Argued December 10, 2014

Decided April 2, 2015

RYAN, J., delivered the opinion of the Court, in which ERDMANN, STUCKY, and OHLSON, JJ., joined.  BAKER, C.J., filed a separate dissenting opinion.


Counsel


For Appellant:  Major Yolanda D. McCray Jones (argued); Colonel Patricia A. Ham, Lieutenant Colonel Jonathan F. Potter, Major Jacob D. Bashore, Major Amy E. Nieman, and Captain Aaron R. Inkenbrandt (on brief); Colonel Kevin Boyle.


For Appellee:  Captain Carrie L. Ward (argued); Colonel John P. Carrell, Lieutenant Colonel Amber J. Roach, Major Katherine S. Gowel, Captain Kenneth W. Borgnino, and Captain Janae M. Lepir (on brief); Captain Timothy C. Erickson.


Military Judge:  Kwasi L. Hawks

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge RYAN delivered the opinion of the Court.

Pursuant to his pleas, a military judge sitting as a general court-martial convicted Appellant of four specifications of wrongful distribution of a controlled substance and three specifications of wrongful use of a controlled substance in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912(a) (2006). Contrary to Appellant's plea, the military judge convicted Appellant of the involuntary manslaughter of LK, in violation of Article 119, UCMJ. Appellant was sentenced to a reduction to the grade of E-1, forfeiture of all pay and allowances, confinement for a period of seventy months, and a dishonorable discharge. The United States Army Court of Criminal Appeals (CCA) affirmed the findings and sentence. This Court subsequently set aside and dismissed Appellant's conviction for the involuntary manslaughter of LK as legally insufficient. United States v. Bennitt (Bennitt I), 72 M.J. 266, 267 (C.A.A.F. 2013) (holding that "Appellant's conduct was not an offense directly affecting the person"). We reversed the CCA's decision as to Appellant's sentence and returned the record of trial to the CCA for sentence reassessment or a rehearing on the sentence. Id. at 272.

The CCA reassessed Appellant's sentence, and reimposed the same sentence Appellant had received before his appeal to this

2

Court.  United States v. Bennitt (Bennitt II), No. ACM 20100172, 2013 CCA LEXIS 838, at *4-5, 2013 WL 5588229, at *2 (A. Ct. Crim. App. Sept. 25, 2013) (unpublished).  The CCA explained that "[a]lthough appellant now stands acquitted of involuntary manslaughter, pursuant to Rule for CourtsMartial [sic] 1001(b)(4), LK's death was directly related to appellant's conviction for oxymorphone distribution.  Therefore, the evidence underlying the dismissed charge was proper aggravation evidence . . . ."  Bennitt II, 2013 CCA LEXIS 838, at *3-4, 2013 WL 5588229, at *1.

On a motion for reconsideration in light of United States v. Winckelmann, 73 M.J. 11 (C.A.A.F. 2013), the CCA again reassessed, and did not change, Appellant's sentence.[1]  United States v. Bennitt (Bennitt III), No. ACM 20100172, 2014 CCA LEXIS 188, at *11, 2014 WL 1246764, at *3 (A. Ct. Crim. App. Mar. 25, 2014) (unpublished).  The CCA's reasoning did change, however.  The CCA concluded that evidence of LK's death was admissible aggravation evidence because Appellant's Article

---

[1] We granted review of the following issue:

> WHETHER THE ARMY COURT OF CRIMINAL APPEALS ABUSED ITS
> DISCRETION BY RE-AFFIRMING APPELLANT'S APPROVED SENTENCE
> AFTER THIS COURT SET ASIDE HIS CONVICTION FOR MANSLAUGHTER.

Because we hold that the CCA's analysis included the erroneous statement that Appellant was convicted of distribution to LK as part of his Article 112a, UCMJ, conviction, we do not reach the granted issue.

112a, UCMJ, conviction of oxymorphone distribution on divers occasions on or about February 14, 2009, included distribution of the drug to LK. Bennitt III, 2014 CCA LEXIS 188, at *9-10, 2014 WL 1246764, at *3.

While the CCA enjoys broad discretion in reassessing a sentence, Winckelmann, 73 M.J. at 15, 18, it cannot base its reassessment on an erroneous statement of law. See United States v. Baier, 60 M.J. 382, 384-85 (C.A.A.F. 2005) (holding that the lower court improperly relied on an erroneous view of the law when reassessing the appellant's sentence). The CCA erred as a matter of law in its second reassessment when it stated that Appellant was convicted of distribution of oxymorphone to LK as part of his Article 112a, UCMJ, conviction. Bennitt III, 2014 CCA LEXIS 188, at *9-10, 2014 WL 1246764, at *3. We therefore reverse the decision of the CCA and remand for sentence reassessment or a sentence rehearing consistent with this opinion.

## I.  FACTS

We described all of the facts surrounding the charged events in our opinion in Bennitt I. 72 M.J. at 267-68. This disposition requires special attention to the chronology of events on the night LK died -- the evening of February 14 and early morning of February 15, 2009.

Appellant gave two sworn statements to law enforcement,

4

both of which were admitted as evidence to support the contested Article 119, UCMJ, charge and specifications.  In the first, he testified that around 1:00 a.m. or 1:30 a.m. on February 15, he picked up his girlfriend, LK, and her friend, TY, and brought them back to his room on base.  He stated that around 1:45 a.m. he snorted an oxymorphone pill LK gave him; around 2:00 a.m. or 2:15 a.m., he left the room; he later returned and found LK and TY asleep; around 3:00 a.m., Appellant laid down with them and fell asleep; and at 4:30 a.m., he woke to find LK foaming at the mouth and pale.

In his second statement, Appellant wrote that about 9:00 p.m. on February 14, he borrowed a soldier's truck and drove to meet LK.  After purchasing pills and running other errands, Appellant drove LK and TY to his barracks.  Appellant stated that upon returning to the barracks he gave pills to another soldier, then took LK and TY to his room to watch a movie.  He admitted to crushing and snorting one pill then preparing a second pill for LK and TY to snort.  Shortly after they snorted these pills, Appellant received a phone call from a friend asking him to find some "weed."  He made a call then left his room to search for marijuana.  According to Appellant, he returned to find LK and TY asleep on his bed, joined them for an hour and a half, woke to find LK unresponsive, and called 911.

Appellant's call log shows outgoing calls at 1:07 a.m. and

3:35 a.m. on February 15, and one incoming call at 1:11 a.m. that lasted approximately two minutes. At trial, an EMT testified that he received the 911 call about LK at 3:35 or 3:40 a.m. on February 15. TY testified at trial that she, Appellant, and LK got to base at 11:17 p.m. on February 14.

In relevant part, the Government charged Appellant with distribution of oxymorphone "on divers occasions between on or about 14 February 2009 and on or about 15 February 2009," a violation of Article 112a, UCMJ, as well as involuntary manslaughter of LK by "aiding or abetting her wrongful use Oxymorphone and Alprazolam," in violation of Article 119, UCMJ.

Appellant pleaded guilty to distribution of oxymorphone, with the exception of the words "on divers occasions between" and "and on or about 15 February 2009," to which he pleaded not guilty.[2] During the providence inquiry, Appellant testified that he distributed oxymorphone to three soldiers on February 14. He did not testify that he distributed oxymorphone to LK. Following the merits phase of the court-martial, the military judge found Appellant guilty of distribution of oxymorphone "on divers occasions" "on or about" February 14, 2009, but not guilty of the excepted words "between" and "on or about 15 February 2009." In relevant part, he also found Appellant

---

[2] Appellant subsequently modified his plea to admit guilt on divers occasions "on or about 14 February 2009."

6

guilty of unlawfully killing LK "by aiding and abetting her wrongful use of Oxymorphone" "between on or about 14 February 2009 and on or about 15 February 2009."[3]  (Emphasis added.)

## II.  ARMY COURT OF CRIMINAL APPEALS SENTENCE REASSESSMENT

In its March 25, 2014, opinion on reconsideration in light of Winckelman, the CCA stated that the Government's theory at trial was that the involuntary manslaughter charge was "a form of aggravated distribution of oxymorphone," and that "[t]he evidence in this case . . . showed that on or about 14 February 2009, [A]ppellant distributed oxymorphone to . . . LK, and then went further in facilitating LK's use of the drug."  Bennitt III, 2014 CCA LEXIS 188, at *6, *8, 2014 WL 1246764, at *2-3 (emphasis added).  Based on the evidence at trial, Appellant's sworn statements, the providence inquiry testimony, and the overlap of the time frames specified in the Article 112a, UCMJ, distribution charge and the Article 119, UCMJ, involuntary manslaughter charge set aside by this Court, the CCA concluded that Appellant's Article 112a, UCMJ, distribution conviction "covers and includes his distribution to LK."  Bennitt III, 2014 CCA LEXIS 188, at *9, 2014 WL 1246764, at *2-3.

---

[3] The military judge found Appellant not guilty of the excepted words "and Alprazolam."

7

### III.  DISCUSSION

As a preliminary matter, we note that in Bennitt I, we held Appellant's conviction for involuntary manslaughter "is legally insufficient because Appellant's distribution of the controlled substance was not an 'offense . . . directly affecting the person.'"  72 M.J. at 267 (quoting Article 119(b)(2), UCMJ). Our use of the word "distribution" was a description of the conduct underlying the involuntary manslaughter charge, not a holding that Appellant's Article 112a, UCMJ, conviction for distribution of oxymorphone included distribution to LK -- a matter which our opinion in Bennitt I did not address.  While Appellant no doubt did distribute oxymorphone to LK, as he himself admitted, that "distribution" was presented as the means by which he was guilty of the Article 119, UCMJ, manslaughter offense, which this Court vacated.  Contrary to the CCA's conclusion, the Article 112a, UCMJ, conviction did not include distribution of oxymorphone to LK.

An accused has a right to be tried and "heard on the specific charges of which he is accused." United States v. Dunn, 442 U.S. 100, 106 (1979).  Though the CCA has significant factfinding powers under Article 66, UCMJ, the CCA is "not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial."  United States v. Miller, 67 M.J. 385, 388 (C.A.A.F. 2009) (quoting

8

Dunn, 442 U.S. at 107). To that end, "an appellate court may not affirm an included offense on 'a theory not presented to the' trier of fact." United States v. Riley, 50 M.J. 410, 415 (C.A.A.F. 1999) (quoting Chiarella v. United States, 445 U.S. 222, 236 (1980)); see also United States v. Standifer, 40 M.J. 440, 445 (C.M.A. 1994) ("If the evidence is sufficient to establish an included offense, this Court may affirm the included offense, provided that it does not do so on a theory not presented to the trier of fact.").

The CCA's finding was based on "a theory not presented to the trier of fact." Riley, 50 M.J. at 415 (internal quotation marks omitted). First, the Government did not present evidence that Appellant gave oxymorphone to LK in support of the Article 112a, UCMJ, charge. Next, Appellant's guilty plea to the Article 112a, UCMJ, charge does not support distribution to LK -- in pleading, he excepted the words "and on or about 15 February 2009," to which he pleaded not guilty. Nor did Appellant testify during the providence inquiry that he distributed oxymorphone to LK. While the Government could have gone forward on the merits to prove Appellant was guilty of the excepted words, the Government did not do so. See United States v. Hartsfeld, 18 C.M.A. 569, 570, 40 C.M.R. 281, 282 (1969) (affirming a conviction despite an improvident plea because the government proved the conduct during the merits phase).

The record, particularly the Government's opening statement, reveals that the Government's theory in the merits phase was that Appellant was guilty of involuntary manslaughter, in violation of Article 119, UCMJ, by means of aiding and abetting LK's use of oxymorphone.  In pursuit of this, the Government did present evidence -- most notably Appellant's second sworn statement -- that he distributed oxymorphone to LK; however, the Government brought this evidence as support for the Article 119, UCMJ, involuntary manslaughter charge, which this Court set aside.  See Bennitt I, 72 M.J. at 267.

Moreover, the CCA was bound by the military judge's finding that Appellant was not guilty of distribution on February 15. The CCA can "affirm only such findings of guilty . . . as it finds correct in law and fact," Article 66(c), UCMJ, and "cannot find as fact any allegation in a specification for which the fact-finder below has found the accused not guilty." United States v. Walters, 58 M.J. 391, 395 (C.A.A.F. 2003); see also United States v. Smith, 39 M.J. 448, 451-52 (C.M.A. 1994), overruled on other grounds by United States v. Fosler, 70 M.J. 225 (C.A.A.F. 2011) ("[A CCA] may not make findings of fact contradicting findings of not guilty reached by the factfinder.").  The military judge waited to pronounce his findings for all of the charges and specifications until after the conclusion of the merits trial for involuntary manslaughter.

The military judge found Appellant guilty of distribution of oxymorphone "on divers occasions" "on or about" February 14, 2009, but not guilty of the excepted words "between" and "on or about 15 February 2009." The effect of this finding is that neither this Court nor the CCA is free to conclude that Appellant's conviction for that specification of the Article 112a, UCMJ, charge included distribution on February 15 -- even if the record showed that he actually distributed on that day.[4] Walters, 58 M.J. at 395.

Nor is the record legally sufficient to support a distribution to LK on February 14, even if the Government had intended to prove at trial distribution of oxymorphone to LK in support of the Article 112a, UCMJ, conviction. In Appellant's initial sworn statement, he indicated multiple times, unequivocally, that his relevant interactions with LK all occurred on February 15, 2009. In Appellant's second statement, he recalled that "[s]hortly after" he, LK, and TY snorted the oxymorphone, he made a call to look for marijuana, left his room to try to locate some marijuana, then returned to his room and

---

[4] Normally, the charge "on or about February 14, 2009" would include the early morning hours of February 15, 2009, and whether an action took place just before midnight or just after midnight is usually insignificant. However, because Appellant excepted the portions of his plea dealing with February 15, and the military judge found Appellant not guilty of distribution on February 15, in this case "on or about" cannot include actions that took place on February 15.

11

fell asleep for "about an hour and a half."  Appellant's call logs, along with the EMT's testimony, corroborate the timing established in his second statement, and show that these calls and the tragic interactions that resulted in the death of LK took place on February 15.  Finally, while TY testified that she, Appellant, and LK arrived on base at 11:17 p.m. on February 14, nothing in her testimony suggests that she or LK took oxymorphone on February 14.  Together, this evidence is legally insufficient to support the conclusion that Appellant's distribution to LK took place on February 14.  See United States v. Tollinchi, 54 M.J. 80, 82 (C.A.A.F. 2000).

## IV.  CONCLUSION

We hold that the CCA erred as a matter of law in stating that Appellant was convicted of distribution to LK as part of his Article 112a, UCMJ, conviction.  In so holding, we make no statement on whether sentence reassessment rather than a rehearing was appropriate, the admissibility of evidence of LK's death as aggravation evidence for the distribution charge, or whether the reassessed sentence was also appropriate.  The decision of the United States Army Court of Criminal Appeals is therefore reversed.  The record is returned to the Judge Advocate General of the Army for remand to the CCA for reassessment of the sentence or rehearing in light of our findings.

BAKER, Chief Judge (dissenting):

I respectfully dissent from this Court's opinion concluding that Appellant was not convicted of distribution of oxymorphone to LK.  This conclusion is contrary to the military judge's findings, the lower court's findings, and the record in this case.  The majority's conclusion is also contrary to this Court's long-standing practice interpreting the language "on or about," which, in this case, encompasses the early morning hours of February 15 as well as February 14 for a specification alleging "on or about February 14."  Therefore, the military judge properly found Appellant guilty of distribution on or about February 14, which language encompassed both the factual possibility that Appellant provided LK the drug during the late hours of February 14 or the early morning hours of February 15.

LK is the sixteen-year-old victim who died as a result of Appellant's distribution.  Under specification 3 of Charge II, the Government alleged the following:

> In that [Appellant] did, at or near Fort Lewis, Washington, on divers occasions between on or about 14 February 2009 and on or about 15 February 2009, wrongfully distribute some amount of Oxymorphone, a Schedule II controlled substance.

Appellant entered a plea of guilty to this specification as follows:

> To specification 3 Charge II:  Guilty

> Except the words and figures "between" and "and
> on or about 15 February 2009"; to the excepted
> words and figures:  Not Guilty;

To the Charge:  Guilty

Thus, in substance, Appellant's exceptions resulted in a plea to a specification that would have appeared as follows:  in that Appellant did, at or near Fort Lewis, Washington, on divers occasions ~~between~~ on or about 14 February 2009 ~~and on or about 15 February 2009~~, wrongfully distribute some amount of Oxymorphone, a Schedule II controlled substance.

Following the entry of Appellant's pleas, the Government proceeded on the merits.  In his opening statement trial counsel stated:

> So, if you follow the drugs in this case, Your Honor, you
> will find that, on 14 February 2009, that this accused
> obtained essentially a truck-load of Opana and Alprazolam.
> . . . And that [Appellant] on 14 February 2009,
> [distributed those two drugs to several soldiers.  He also,
> though, Your Honor, [distributed] the Opana, we know for
> certain, and probably the . . . Alprazolam, to [LK], in the
> late hours of 14 February 2009, and the early morning hours
> of 15 February 2009.  And it is those two drugs in the very
> possession of the accused on 14 February 2009, that killed
> [LK].

During the trial, the prosecution offered, among other things, Appellant's sworn statement.  The statement was admitted as Prosecution Exhibit 27 and recites Appellant's account of the events during the day and into the late evening of February 14, 2009, during which he obtained several drugs and subsequently distributed those drugs to several individuals including LK.

2

Specifically, Appellant stated that around 9:00 p.m. on February 14, he borrowed a friend's truck and proceeded to a location where he purchased several oxymorphone pills. According to the statement, about twenty minutes after procuring the drug, he, LK and one of LK's friends returned to his barracks. Appellant then stated:

> Once we got [to] the barracks I gave [S] his pills and then I went back to my room. I put in a movie and we were watching it. When we were watching the movie I crushed up two of the pills that I had gotten for myself and snorted them. . . . After I snorted the two pills I crushed up the other pill and [LK] and her friend snorted it.

Finally, according to Appellant, he left the room, returned later and fell asleep in the bed with the two girls. He awoke at some point and found LK unresponsive.

At the close of the evidence, the military judge entered the following finding to specification 3 of Charge II:

> Of specification 3 of Charge II: Guilty;
>
>> Except the word "between" and except the words and figures, "and on or about 15 February 2009."

The military judge's exceptions resulted in a finding of guilty of wrongful distribution of oxymorphone "on divers occasions on or about 14 February 2009." On Appellant's statement alone, the military judge, sitting as the reasonable trier of fact in the case, could have found that the distribution of oxymorphone to LK occurred during the evening of the 14th.

However, even if one were to conclude that it occurred during the very early hours of the 15th, (the participants were not keeping careful note of the time), it would still have been considered "on or about" the 14th. In essence, the military judge's exception of the language "and on or about 15 February 2009" had no legal significance given the fact that the finding included the "divers occasions" language and the "on or about 14 February" language. Thus, the record supports a finding in this case that Appellant distributed oxymorphone to the victim LK "on or about 14 February 2009."

The qualifier, "on or about" heretofore has been used in cases, like this one, where the exact time or date of an event may not be known or within the recollection of the critical witnesses, but nonetheless fairly orients the accused to the offense charged. "'On or about,' however, are words of art in pleading which generally connote any time within a few weeks of the 'on or about' date." United States v. Brown, 34 M.J. 105, 110 (C.M.A. 1992). "The words 'on or about' in pleadings mean that 'the government is not required to prove the exact date, if a date reasonably near is established.'" United States v. Hunt, 37 M.J. 344, 347 (C.M.A. 1993) (quoting United States v. Nersesian, 824 F.2d 1294, 1323 (2d Cir. 1987). "When a charge employs 'on or about' language, the Government is not required to prove the specific date alleged in the charge." United

States v. Allen, 50 M.J. 84, 86 (C.A.A.F. 1999). Upon entry of his pleas, Appellant did not except either the "divers occasions" language or the "on or about" language as it pertained to February 14, 2009. Similarly, the military judge did not except those phrases when he entered his finding to specification 3 of Charge II. The military judge used the date to which the Appellant pleaded guilty knowing that in accordance with this Court's long-standing case law and military practice, a conviction "on or about February 14" would cover the potential variances in fact as to the precise moment on February 14 or 15 at which the drug was distributed to LK.

If, at the time of trial, there had been any question or confusion on the part of the defense as to what specification 3 included, counsel had at least two remedies available. First, prior to trial, the defense could have moved for a bill of particulars under Rule for Courts-Martial (R.C.M.) 906(b)(6). Alternatively, since this was a military judge-alone trial, the defense could have requested special findings under R.C.M. 918(b). The defense did neither.

Finally, the majority concedes that the evidence of record proves that Appellant distributed oxymorphone to the victim. However, according to the majority, since this evidence was "presented as the means by which he was guilty of the Article 119[(b)(2), Uniform Code of Military Justice (UCMJ), 10 U.S.C. §

919(b)(2) (2006)], . . . offense," this resulted in a theory not presented to the trier of fact on the Article 112a, UCMJ, 10 U.S.C. § 912a (2006), offense. United States v. Bennitt, __ M.J. __, __ (8) __ (C.A.A.F. 2015). This reasoning does not make sense since the sole theory of the manslaughter offense was the distribution to LK, which occurred "on or about" February 14. The majority buttresses its view with the statement that "the Government did not present evidence that Appellant gave oxymorphone to LK in support of the Article 112a, UCMJ, charge." Bennitt, __ M.J. at __ (9). I am not aware of authority that requires the prosecution during the trial of the facts to continually announce what evidence is being offered to support individual offenses, and indeed the majority cites none. In every criminal trial, the charges are presented, the evidence is admitted, and the trier of fact returns a verdict. That is exactly what happened in this case. Thus, it appears the majority is substituting its own finding on the facts, notwithstanding those entered by the military judge and the CCA, and without identifying how as a matter of law either the military judge or the CCA erred.[1]

---

[1] The majority's decision to reinterpret the meaning of "on or about" and to reverse the CCA's conclusion regarding the distribution to the manslaughter victim in this case seems all the more misplaced, because this Court did not grant this case

     As a result, I respectfully dissent.

---

on that basis and has not heard argument nor received briefs on the issue.