# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK[1], HAIGHT, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 TIMOTHY E. BENNITT**
**United States Army, Appellant**

ARMY 20100172

Headquarters, I Corps
Kwasi Hawks, Military Judge
Colonel Mitchell R. Chitwood, Staff Judge Advocate

For Appellant: Lieutenant Colonel Charles D. Lozano, JA; Captain Patrick J. Scudieri, JA; Aaron R. Inkenbrandt, JA (on brief).

For Appellee: Major A.G. Courie, III, JA; Major Janae M. Lepir, JA; Captain Carrie L. Ward, JA (on brief).

3 September 2015

-----------------------------------------------------------------
SUMMARY DISPOSITION ON FURTHER REVIEW
-----------------------------------------------------------------

Per Curiam:

A military judge sitting as a general court-martial convicted appellant, consistent with his pleas, of four specifications of wrongful distribution of a controlled substance and four specifications of wrongful use of a controlled substance, each in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (2006) [hereinafter UCMJ]. Contrary to appellant's plea, the military judge also convicted appellant of involuntary manslaughter while perpetrating an offense directly affecting the person of LK by aiding or abetting her wrongful use of a controlled substance in violation of Article 119(b)(2), UCMJ.[2] The convening

_____

[1] Senior Judge COOK took final action in this case prior to his retirement.

[2] The military judge acquitted appellant of involuntary manslaughter by culpable negligence under Article 119(b)(1), UCMJ.

authority approved the adjudged sentence of a dishonorable discharge, confinement for seventy months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority also credited appellant with 360 days of confinement against his sentence to confinement.

On 16 May 2012, in a per curiam opinion, this court affirmed the findings and sentence. Our superior court, the Court of Appeals for the Armed Forces (CAAF), in *United States v. Bennitt* (*Bennitt I*), 72 M.J. 266 (C.A.A.F. 2013), reversed our decision in regard to the Article 119(b)(2), UCMJ, offense. In setting aside the finding of guilty and dismissing the specification for legal insufficiency, CAAF found appellant's distribution of oxymorphone to LK, his 16-year-old girlfriend, which led to her death by overdose, did "not constitute . . . an offense directly affecting the person." *Id.* at 271-72. Our superior court also set aside appellant's sentence; affirmed the remaining findings of guilty; and returned the record of trial to The Judge Advocate General of the Army, who in turn returned the record to this court to either reassess the sentence or direct a rehearing on sentence.

On 25 September 2013, in a Summary Disposition on Further Review, based on the entire record and after reassessing the sentence, we affirmed the sentence. *United States v. Bennitt* (*Bennitt II*), ARMY 20100172, 2013 CCA LEXIS 838 (Army Ct. Crim. App. 25 Sept. 2013) (summ. disp.). In so doing, we found that "[a]lthough appellant now stands acquitted of involuntary manslaughter, pursuant to Rule for Courts-Martial 1001(b)(4), LK's death was directly related to appellant's conviction for oxymorphone distribution." *Id.* at *3-4. Therefore, the evidence underlying the dismissed charge was proper aggravation evidence . . . ." *Id.* at *4. Pursuant to appellate defense counsel's request, we reconsidered our decision, but ultimately affirmed again the reassessed, approved sentence on 25 March 2014. *United States v. Bennitt* (*Bennitt* III), ARMY 20100172, 2014 CCA LEXIS 188 (Army Ct. Crim. App. 25 Mar. 2014) (summ disp.).

On 2 April 2015, our superior court set aside that decision. *United States v. Bennitt* (*Bennitt IV*), 74 M.J. 125 (C.A.A.F. 2015). While acknowledging that appellant distributed oxymorphone to LK, CAAF specifically ruled that appellant's conviction for distribution of oxymorphone did not include that acknowledged distribution to LK.[3] *Id.* at 128. Our superior court further stated, "we make no

---

[3] The court explained:

> As a preliminary matter, we [CAAF] note that in *Bennitt I*, we held Appellant's conviction for involuntary manslaughter "is legally insufficient because Appellant's distribution of the controlled substance was not an

(continued . . .)

2

statement on whether sentence reassessment rather than a rehearing was appropriate, the admissibility of evidence of LK's death as aggravation evidence for the distribution [to those other than LK] charge, or whether the reassessed sentence was also appropriate." *Id*. at 129. Finally, our superior court returned the record to The Judge Advocate General of the Army for remand to this court for reassessment of the sentence or a rehearing. *Id*.

Having now once again thoroughly reviewed this case, we find reassessment appropriate.

## LAW AND DISCUSSION

As a preliminary matter, we must first determine whether evidence of appellant's distribution of oxymorphone to LK and her death is admissible as aggravation evidence in regards to appellant's conviction for distribution of oxymorphone.

Appellant argues that we cannot consider this evidence because it not only represents uncharged misconduct, but also should be excluded pursuant to Military Rule of Evidence [hereinafter Mil. R. Evid.] 403. In the alternative, appellant posits that LK's death was not sufficiently related to appellant's actions to warrant its use as aggravating evidence.

---

(. . . continued)

'offense . . . directly affecting the person.'" Our use of the word "distribution" was a description of the conduct underlying the involuntary manslaughter charge, not a holding that Appellant's Article 112a, UCMJ, conviction for distribution of oxymorphone included distribution to LK -- a matter which our opinion in *Bennitt I* did not address. While Appellant no doubt did distribute oxymorphone to LK, as he himself admitted, that "distribution" was presented as the means by which he was guilty of the Article 119, UCMJ, manslaughter offense, which this Court vacated. Contrary to the CCA's conclusion, the Article 112a, UCMJ, conviction did not include distribution of oxymorphone to LK.

*Bennitt IV*, 74 M.J. at 128 (internal citations omitted).

Government counsel, on the other hand, in encouraging us to use this distribution and death as a matter in aggravation, cites to *United States v. Shupe*, 36 M.J. 431 (C.M.A. 1993). In that case, our superior court allowed the admission of testimony concerning Shupe's involvement in LSD transactions and introductions of LSD onto a naval base that were in addition to those he admitted to during his providence inquiry. *Id*. at 436. In so doing, our superior court found this evidence was admissible under Rule for Courts-Martial [hereinafter R.C.M.] 1001(b)(4), specifically finding "it showed 'the continuous nature of the charged conduct and its full impact on the military community.'" *Id*. (quoting *United States v. Ross*, 34 M.J. 183, 187 (C.M.A. 1992)).

In applying R.C.M. 1001(b)(4) ("Evidence in aggravation") to the current case, we find that while the distribution to LK is admissible because, like *Shupe*, it clearly illustrates the "continuous nature of the charged conduct and its full impact on the military community," evidence concerning LK's death is not. 36 M.J. at 436 (quoting *Ross*, 34 M.J. at 187). The distribution to LK was closely related to a charge of which appellant remains convicted in that it involved the same drug, the same location, and the same timeframe. Although we do not agree with appellant's characterization that appellant's distribution to LK or her death represents uncharged misconduct or that this evidence should be excluded under Mil. R. Evid. 403, based on the facts and posture of appellant's case, we find too tenuous a link to extend R.C.M. 1001(b)(4) to allow the admission of LK's death to be used as aggravation evidence.

In deciding whether we can reassess appellant's sentence, we consider the totality of the circumstances presented by appellant's case, including the principles and non-exhaustive list of factors articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

First, we note the penalty landscape and exposure was not dramatically changed by our superior court's earlier decision to set aside appellant's Article 119(b)(2), UCMJ, conviction. *See Winckelmann*, 73 M.J. at 15. After trial, appellant stood convicted of offenses that exposed him to 82 years of confinement. Setting aside the Article 119(b)(2), UCMJ, conviction reduced appellant's maximum sentence to confinement by 10 years. The CAAF's later ruling that appellant's conviction for oxymorphone distribution does not include the distribution to LK does not affect the maximum potential punishment at all. As such, appellant's approved sentence to 70 months of confinement is still well below the adjusted maximum period of confinement. This factor weighs in favor of our ability to reassess his sentence.

Second, appellant chose to be sentenced by a military judge alone and because "the courts of criminal appeals are more likely to be certain of what a military judge

4

would have done as opposed to members," this factor also favors our ability to reassess his sentence. *Id*. at 16.

With respect to the third factor, we note that at its core, the gravamen of appellant's misconduct remains the same. *Id*. Appellant's case involved multiple unlawful distributions of powerful and dangerous controlled substances to soldiers in the military barracks. Not being able to consider LK's death as an aggravating factor does not impact the seriousness of appellant repeatedly distributing oxycodone to soldiers in the barracks or distributing, again in the barracks, oxymorphone to multiple soldiers on divers occasions. Each of these convictions carried a maximum punishment that included confinement for 15 years and a dishonorable discharge.

In addition, per our discussion above, we can still consider that appellant provided oxymorphone to a 16-year-old in the barracks as a factor in aggravation despite the fact appellant is not convicted of distribution to LK. *See Shupe*, 36 M.J. 431. Appellant also still stands convicted of distributing marijuana to soldiers in the barracks and distributing alprazolam, a Schedule IV controlled substance, to a soldier in the barracks. These drug distributions carried with them a maximum punishment that included, respectively, 15 and 10 years of confinement and a dishonorable discharge. Although we are no longer considering LK's death as an aggravating factor, the remaining offenses of which appellant stands convicted continue to capture the gravamen of appellant's criminal conduct and therefore this factor weighs in favor of our ability to reassess this case.

Finally, in reviewing the fourth factor, based on our experience and familiarity with the type of charges that remain, we are confident we can reliably determine what sentence, at a minimum, would have been imposed at trial. *Id*. Having concluded that all four enumerated *Winckelmann* factors support our ability to reassess appellant's sentence and after considering the totality of the circumstances presented by appellant's case, to include the noted error, we find that we are able to reassess appellant's sentence.

## CONCLUSION

Reassessing the sentence based on the errors noted and the entire record, we AFFIRM only so much of the approved sentence that includes a dishonorable discharge, confinement for sixty-three months, and reduction to the grade of E-1. We find this reassessed sentence is not only purged of any error, but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings and sentence that have been set aside, are ordered restored.

5



FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court