*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellee

**v.**

**Justin P. SWIFT, Specialist**
United States Army, Appellant

**No. 16-0407**
Crim. App. No. 20100196

Argued November 16, 2016—April 26, 2017

Military Judges: Michael J. Hargis and Timothy P. Hayes Jr.

For Appellant: *Captain Michael A. Gold (argued); Lieutenant Colonel Melissa R. Covolesky, Lieutenant Colonel Charles D. Lozano, Captain Katherine L. DePaul*, and *Captain Heather L. Tregle (on brief)*; *Lieutenant Colonel Jonathan F. Potter* and *Major Andres Vasquez Jr.*

For Appellee: *Captain Samuel E. Landes (argued); Lieutenant Colonel A. G. Courie III* and *Major Jihan Walker (on brief)*.

Judge RYAN delivered the opinion of the Court, in which Chief Judge ERDMANN, and Judges STUCKY, OHLSON, and SPARKS, joined.

————————

Judge RYAN delivered the opinion of the Court.

A panel of officers and enlisted members sitting as a general court-martial convicted Appellant, contrary to his pleas, of two specifications of indecent acts with a child in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000). The panel sentenced Appellant to a dishonorable discharge, fourteen years of confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

On appeal under Article 66, UCMJ, 10 U.S.C. § 866 (2012), the United States Army Court of Criminal Appeals (ACCA), in consideration of this Court's decision in *United States v. Humphries*, 71 M.J. 209 (C.A.A.F. 2012), dismissed the Charge and its specifications without prejudice for failure to allege the terminal element of Article 134, UCMJ, noting that there was no "bar to a new trial on the underly-

ing misconduct." *United States v. Swift*, No. ARMY 20100196, 2012 CCA LEXIS 459, at *5, 2012 WL 6021474, at *2 (A. Ct. Crim. App. Nov. 29, 2012) (unpublished). The Judge Advocate General of the Army certified the disposition of that issue pursuant to Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2012). 72 M.J. 37 (C.A.A.F. 2013). This Court summarily affirmed the decision of the ACCA. 72 M.J. 466 (C.A.A.F. 2013).

A military judge alone, sitting as a general court-martial, subsequently convicted Appellant, contrary to his pleas, of two specifications of indecent acts with a child in violation of Article 134, UCMJ, based on the same underlying misconduct.[1] Appellant was sentenced to a dishonorable discharge, eleven years of confinement, and a reduction to the grade of E-1. The convening authority approved the sentence as adjudged. The ACCA affirmed the findings of guilty and sentence. *United States v. Swift*, No. ARMY 20100196, 2016 CCA LEXIS 26, at *10, 2016 WL 270822, at *4 (A. Ct. Crim. App. Jan. 21, 2016) (unpublished).

We granted Appellant's petition to review the following issues:

> I. Whether the Army Court denied Appellant his substantial right to an Article 66(c) review by affirming the findings and sentence on uncharged misconduct presented at trial rather than the charged offenses.
>
> II. Whether the military judge erred by admitting Appellant's pretrial statement where there was no independent evidence to corroborate the essential facts admitted.
>
> III. Whether the evidence of the two convictions of indecent acts with a child is legally sufficient.

While the facts underlying our decision are complicated, the law is quite straightforward. First, where, as here, a CCA's Article 66(c), UCMJ, factual and legal sufficiency review appears to affirm the findings of guilty based solely upon *uncharged* misconduct, it is legally deficient, and a proper Article 66(c), UCMJ, review must be conducted upon remand from this Court. *United States v. McAllister*, 55 M.J. 270, 277 (C.A.A.F. 2001). Second, where, as here, an accused states he has "no objection" to the admission of a confession at trial, he has waived his right to complain on appeal that

---

[1] Appellant did not object to his retrial, and raised no issues related to retrial before either the ACCA or this Court.

the confession lacked sufficient corroboration to be admitted. *See* Military Rule of Evidence (M.R.E.) 304(c), (f)(1), *Supplement to the Manual for Courts-Martial, United States* (2012 ed.) (as amended by Exec. Order No. 13,643, 78 Fed. Reg. 29,559, 29,564 (May 15, 2013)); *see also United States v. Miller*, 31 M.J. 247, 252 (C.M.A. 1990). Finally, we leave it to the ACCA in the first instance to assess the status and relevance of the uncharged misconduct when determining whether the evidence of the charged offenses was legally and factually sufficient.

The decision of the ACCA is vacated, and the case is remanded to the ACCA for further action consistent with this opinion.

## I. FACTS

### A. The Charged Conduct

In a sworn statement to Criminal Investigation Command (CID), Appellant confessed to molesting his daughter KS on two occasions. First, Appellant admitted that he touched KS in Hawaii in November or December of 2003 after mistaking her for his wife in bed (hereinafter Hawaii Bedside Incident). According to his confession, Appellant entered his bedroom in the dark and climbed into bed with his wife. Unaware that KS was also in bed sleeping with his wife, he reached down the undergarments of KS, thinking it was his wife, and fondled KS's vagina. His wife then told him that KS was in bed with them, and upon realizing he was touching KS, he immediately removed his hand.

Second, Appellant admitted that he touched KS in Texas in June of 2007 while asleep and dreaming of making love to an "old flame" (hereinafter Texas "Old Flame" Incident). In his sworn statement, Appellant stated that he was lying in bed with KS reading her a book. He recounts blacking out and dreaming that he was laying his head on a woman's chest and fondling her vagina. He further recounts being woken up from his dream by his wife while he was asleep on the couch, and he could not remember how he moved from the bed to the couch. After waking him up, his wife asked him if he had touched KS.

The Government charged these acts as violations of Article 134, UCMJ. Specification One alleged that Appellant:

> [D]id, at or near Schofield Barracks, Hawaii, between on or about 1 November 2003 and on or about 31 December 2003, commit an indecent act

upon the body of Miss KS, a female under 16 years
of age, not the wife of the accused, by touching her
vulva with his hand . . . .

Specification Two alleged that Appellant:

[D]id at or near Fort Bliss, Texas, between on or
about 1 May 2007 and on or about 5 September
2007, commit an indecent act upon the body of Miss
KS, a female under 16 years of age, not the wife of
the accused, by lying his head upon her chest and
touching her vulva with his hand . . . .

### B. M.R.E. 404(b) and 414 Evidence

The Government filed a motion in limine to admit evidence of uncharged misconduct pursuant to M.R.E. 404(b) and M.R.E. 414 to "demonstrate an opportunity, intent, and absence of mistake or accident," and "because other similar incidents of [child] molestation would make it more probable that the Accused committed the charged acts." The acts of child molestation depicted in the specifications, *supra*, are referenced in the motion and are specifically tied to Appellant's sworn statement to CID:

The accused stated that on one of these occasions,
he was mistaken as to the fact that it was his
daughter and not his wife whom he was fondling
and, on the other occasion, that he was sleep-
walking and did not realize what he was doing un-
til he had fondled his daughter.

The Government then offered a summary of three instances of *uncharged* misconduct it intended to introduce, pursuant to M.R.E. 404(b) and 414, albeit without dates or places:

First, the Couch "Peeing" Incident:[2]

KS's therapist, [CR], (now [CL]) called Child Pro-
tective Services to report an incident in which KS
straddled the Accused while he was laying on the
sofa. The Accused had his penis exposed. According
to KS, the Accused "peed" on the couch on her night
gown. KS then cleaned up the mess and stated,
"Here we go again!" The Accused then made the
statement, "I hope no one gets the wrong idea about
this," or words to that effect.

---

[2] Both the Couch "Peeing" and Hawaii Van Incidents were also identified by the Government as uncharged misconduct at Appellant's first trial.

Second, the Hawaii Van Incident:[3]

> During a forensic interview on 29 June 2006, KS revealed that the Accused touched her vulva in the back seat of a van when she was four.

Third, the Texas Pool Incident:

> KS remembers an incident where the Accused touched her vagina while she was changing in her bedroom. According to KS, she had been mean to her sister by pushing her into a pool and was put in time-out in her room. When her time-out was over, the Accused told her to change out of her bathing suit. While she was changing, the Accused told her to stop and sat her on the bed. The accused then fondled her vulva and rubbed his finger between her labia.

In support of its motion, the Government offered two memos from Child Protective Services recounting these incidents.

## C. Other Uncharged Misconduct

Prior to trial, the military judge held a closed session pursuant to Rule for Courts-Martial (R.C.M.) 802 at which the parties discussed "the interview of the complaining witness by the defense, [in which KS provided] information that . . . would indicate an additional act of misconduct by the accused and which goes hand in hand with the 413, 414, or 404(b) motion." Neither the parties nor the military judge expressly identified the nature of this "additional act."

## D. Trial

With respect to the Government's motion in limine, the military judge stated that the parties had agreed that, considering the choice of trial by military judge alone, a ruling on the motion in advance of trial was not necessary. He noted that they "could take up the issue as it came up during the merits portion of the trial concerning any evidence of uncharged or similar misconduct being brought by the government." The military judge also discussed the "additional act" of misconduct and agreed that "if necessary, the defense may request a bill of particulars from the government as to which misconduct that they are actually charging in the case. And, we will take that up as it comes, but we should be able to resolve that as well."

---

[3] The locations for this conduct and the Texas Pool Incident are derived from trial testimony by KS. *See infra* p. 6.

At trial, the Government offered the testimony of KS, her mother, her third-grade teacher, and three counselors to whom KS made general allegations of sexual abuse by Appellant. It also offered the testimony of a physician's assistant who found no evidence of a sleep disorder in Appellant's medical records, and the testimony of a clinical psychologist who vouched for the forensic integrity of one of KS's interviews and opined that KS's various outcries and recantations were consistent with normal behavior of a sexually abused child.

KS did not testify about either the Hawaii Bedside Incident or the Texas "Old Flame" Incident, the charged conduct alleged in the specifications. Instead, she testified that Appellant inappropriately touched her on "two or three" occasions.

First, KS testified that Appellant touched her while they were cleaning the family van in Hawaii when she was four years old (Hawaii Van Incident). KS testified that Appellant touched her vagina over her clothes and fondled her "[f]or a couple of minutes" in a massaging motion.

Second, KS testified that Appellant massaged her vaginal area while she was in time out after pushing her sister into the family's pool. KS testified that the incident occurred in Texas when she was seven (Texas Pool Incident). As she began to testify about the details of this incident, the military judge asked the Government if this was charged or uncharged misconduct. The Government responded that it was uncharged misconduct.

Third, KS testified about the Texas Bedside Incident, which occurred in Texas when she was seven. KS testified that after having a nightmare she went to sleep in bed with her mother. Appellant came home, got in bed, and fondled KS's vagina. While this conduct is physically like the conduct underlying Specification 1, the charged Hawaii Bedside Incident that derived from Appellant's confession occurred in a different state, and several years earlier. It is also distinct from Specification 2, the charged Texas "Old Flame" Incident, which Appellant and the Government described as having occurred while *he* was asleep and not in the presence of his wife.

Fourth, when questioned about her counseling with Ms. CL, KS remembered an incident where she and Appellant were on a couch and his penis fell out of his pants. Ms. CL

provided the remaining details of that uncharged miscon-
duct, the Couch "Peeing" Incident, based on KS's disclosure
to her in January 2008. Ms. CL testified that KS revealed
that Appellant was asleep on the couch, and KS straddled
him to wake him up. As she straddled him, he placed his
hand in his pants, scratched himself, and "peed."

The Government also offered evidence in the form of tes-
timony about generalized disclosures by KS in 2007 to her
third-grade teacher, Ms. VA, and in 2006 to her social work-
er, Ms. RL. In addition, Ms. LF, a child forensic interviewer
with the Department of Public Safety for Texas, testified
that KS disclosed a sexual touching to her during an inter-
view in 2006. A video recording of the forensic interview re-
vealed that KS had described the Hawaii Van Incident.

Finally, Special Agent JS laid the foundation for the ad-
mission of Appellant's confession, in which Appellant de-
scribes the Hawaii Bedside Incident and the Texas "Old
Flame" Incident. When trial counsel moved to enter the con-
fession for identification, defense counsel stated on the rec-
ord that he had "[n]o objection, sir," and proceeded to discuss
the contents of the exhibit throughout his cross-
examination. When the military judge later asked the par-
ties to confirm that the exhibit was one he would review dur-
ing his deliberation, defense counsel agreed, "[i]t is, Your
Honor." The defense subsequently relied on the statement to
argue, inter alia, that, either Appellant told the truth to CID
and has a valid mistake-of-fact defense, or "[KS] co-opted
that statement" to avoid being forced back into her parents'
home.

In closing argument, the Government highlighted KS's
various disclosures, the videotaped interview of KS, and Ap-
pellant's own admissions: "[Appellant] admitted to every-
thing that is on the charge sheet. And, that is something
that defense can't get around." The Government's closing
argument clearly distinguished the two incidents in the
charge sheet—the Hawaii Bedside and Texas "Old Flame"
Incidents—from the other incidents of uncharged conduct:

> And while the accused only admits to assaulting
> [KS] twice, you heard her testify that in addition to
> those two times, there are three others that she
> remembers. The first, when she was four years old
> in the family van in Hawaii. Just her and her dad,
> cleaning out the van, and he rubs her four-year-old
> vagina. [Hawaii Van Incident]

> The second when she was here in Texas; a little girl in timeout from pushing her sister into the pool. And, as he's asking her if she's thought about what she's done, he assaults her again. [Texas Pool Incident] And, finally, another time, where a young child seeks comfort in the bed of her mother after she has a nightmare. And, the accused comes in and again assaults his young daughter. [Texas Bedside Incident]

On rebuttal, the Government again distinguished the uncharged Hawaii Van Incident from the "bigger question" of the conduct admitted in Appellant's confession. Addressing an assertion by Appellant's mother that he touched KS in the van only because they smelled urine and discovered KS's pants were wet, trial counsel argued:

> Yes, a four, almost five-year-old is old enough to say whether or not they are wet. They don't need to be cupped on their vagina to determine that. But, the bigger question, sir, is was the accused checking to see if [KS] was wet *when he fondled her in the bed at four years old*? [Hawaii Bedside Incident] Was he checking to see if she was wet *when he talked about having a dream of his old flame and fondling her vagina* and, oh, waking up and realizing no, it is my daughter at seven? [Texas "Old Flame" Incident] Is he really not going to report a sleep disturbance that causes him to sexually assault his own children? That's what he is going to keep to himself? He's not going to tell a physician's assistant about that? That's what this court is to believe? The accused sexually assaulted his daughter starting at the age of four. *He admitted to it. He is guilty of it. And, this court should find him so.*

(emphasis added).

The military judge convicted Appellant of both specifications, but excepted the language "lying his head upon her chest and" from Specification 2 of the Charge, and the language "prejudicial to good order and discipline in the armed forces" from both specifications.

## II. PROCEDURAL POSTURE

The military judge permitted the introduction of evidence of all four incidents of uncharged misconduct without ever actually ruling on whether they were admissible under M.R.E. 404(b) or 414. In turn, the defense never definitively stated whether it agreed to or objected to admission of the

evidence, or its use for M.R.E. 404(b) or 414 purposes. We do not, therefore, have the benefit of the military judge's findings of fact and conclusions of law. Nor did either party request special findings, as R.C.M. 918(b) permits. There is no question, however, that Appellant was charged with and convicted of the two offenses described in his confession—the Hawaii Bedside and Texas "Old Flame" Incidents.

On appeal, the ACCA affirmed the findings and sentence, albeit solely by reference to evidence of uncharged misconduct. 2016 CCA LEXIS 26, at *10, 2016 WL 270822, at *4. In a summary statement of the facts, the ACCA asserted that:

> Appellant was convicted of sexually assaulting his natural daughter, KS. On one occasion, appellant rubbed his four-year-old daughter's vagina over her clothing while they were cleaning the inside of the family van [Hawaii Van Incident]. On another occasion, appellant massaged his daughter's vagina while she was lying in bed with her mother. KS . . . [also] describe[d] an occasion when KS straddled appellant on the couch as he slept and appellant "peed" when he awoke; KS told her counselor the appellant had his hand down his pants when this occurred and that she had to clean it up [Couch "Peeing" Incident].

2016 CCA LEXIS 26, at *2–3, 2016 WL 270822, at *1.

While the court's reference to "appellant massag[ing] his daughter's vagina" might reflect the charged Hawaii Bedside Incident, rather than the uncharged Texas Bedside Incident, that is far from clear from either the record or the court's subsequent analysis. In its discussion of the admission of KS's "outcry" to her third-grade teacher, the CCA conflated and confused the factual similarities between the Hawaii Bedside Incident and the Texas Bedside Incident. 2016 CCA LEXIS 26, at *7–9, 2016 WL 270822, at *2–4. The court reasoned that "*Appellant's statement* that he mistakenly believed he was touching his wife's vagina and not his *seven year old* daughter was implausible, considering his wife was considerably larger than KS at the time." *Id.* (emphasis added). Unfortunately, KS testified that the Texas Bedside Incident—characterized by the Government in closing and rebuttal as uncharged conduct—occurred in *Texas* when KS was seven. By contrast, Appellant's *statement* and Specification 1 described the Hawaii Bedside Incident, which occurred in *Hawaii*, when KS was *four*.

Like the military judge, the ACCA did not rule on whether the incidents of uncharged conduct were admissible under either M.R.E. 404(b) or 414. 2016 CCA LEXIS 26, at *5, 2016 WL 270822, at *2. Instead, the ACCA facially treated them as if they were the charged conduct, concluded the findings of guilty were legally and factually sufficient, and affirmed. *Id.*

## III. DISCUSSION

While the facts in this case are both unsavory and complicated, the law controlling the decisional issues is very clear.

### A. The ACCA Erred in its Article 66(c), UCMJ, Review

Article 66(c), UCMJ, requires the service courts to conduct a plenary review of the record and "affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [they] find[] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866 (2012). A complete Article 66, UCMJ, review is a "substantial right" of an accused. *United States v. Jenkins*, 60 M.J. 27, 30 (C.A.A.F. 2004). The CCAs have an "affirmative obligation to ensure that the findings and sentence in each such case are 'correct in law and fact . . . and should be approved.' " *United States v. Miller*, 62 M.J. 471, 472 (C.A.A.F. 2006) (alteration in original) (quoting Article 66(c), UCMJ).

While the CCA has broad discretion in conducting its Article 66(c) review, *United States v. Atchak*, 75 M.J. 193, 196 (C.A.A.F. 2016) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)), a CCA's factual sufficiency review is confined to "findings of guilty" "approved by the convening authority." Article 66(c), UCMJ; *cf. United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) ("[The CCA] cannot find as fact any allegations of which the accused was found not guilty at trial."). An even more fundamental concept, of course, is that an accused may only be found guilty of an offense with which he was charged, as well as any lesser-included offenses thereunder—and it is only those offenses that may be affirmed by a reviewing court. *United States v. Jones*, 68 M.J. 465, 468 (C.A.A.F. 2010) (citing *United States v. Miller*, 67 M.J. 385, 388 (C.A.A.F. 2009)); *United States v. Medina*, 66 M.J. 21, 28 (C.A.A.F. 2008); *United States v. Wray*, 17 M.J. 375, 376 (C.M.A. 1984) ("Clearly an accused cannot be convicted of a crime different from that charged.").

Moreover, even where the evidence itself might fit within the technical contours of a specification or indictment, an appellate court may not affirm a conviction based on a theory not presented to the trier of fact. *See Chiarella v. United States*, 445 U.S. 222, 236 (1980); *see also United States v. Bennitt*, 74 M.J. 125, 128 (C.A.A.F. 2015).

It is against this legal backdrop that we consider the Government's surprising assertion that the ACCA's Article 66(c), UCMJ, review is defensible here. The error here is not, as the Government suggests, some minor gap or variance between pleadings and proof. Rather, the legal problem is the basis upon which the ACCA affirmed Appellant's convictions. The Government's position at trial (from the staff judge advocate's recommendation to reprosecute the "same misconduct" all the way up through closing arguments) was that the *charged* misconduct consisted of the two incidents described in Appellant's confession, the Hawaii Bedside and Texas "Old Flame" Incidents. Relatedly, the Government repeatedly maintained through its pretrial motions and arguments that the Couch "Peeing," Hawaii Van, Texas Pool, and Texas Bedside Incidents reflected *uncharged* conduct.

With these distinctions and instances of conduct demarcated as they were by the Government, there is no reasonable basis upon which it can base its defense of the ACCA's Article 66(c), UCMJ, review, which affirmed the findings of guilty solely by reference to *uncharged* conduct. 2016 CCA LEXIS 26, at *2, 2016 WL 270822, at *1 (describing the Couch "Peeing," Hawaii Van, and either the Texas or Hawaii Beside Incident). The CCA simply may not substitute uncharged for charged conduct as either the basis for a conviction or the basis for affirming a finding of guilty under Article 66(c), and its review was legally infirm. *See Bennitt*, 74 M.J. at 128; *Miller*, 67 M.J. at 388 (" 'Appellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial.' ") (quoting *Dunn v. United States*, 442 U.S. 100, 107 (1979)); *cf. United States v. Schroder*, 65 M.J. 49, 56 (C.A.A.F. 2007) ("[T]he factfinder may not convict on the basis of propensity evidence alone.").

Under these circumstances, where the "underlying validity of the Article 66(c), UCMJ, review is in question . . . the remedy is to remand the case for a proper factual and legal sufficiency review of the findings of guilty." *United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007) (noting that remand

should not be construed as any determination by this Court as to legal and factual sufficiency based on the evidence presented at trial, which are matters for the lower court to consider de novo).

### B. The Military Judge Did Not Err in Admitting Appellant's Confession

With respect to the ACCA's review on remand, the court may consider Appellant's pretrial confession that was admitted without objection at trial. Appellant argues, first, that the military judge plainly erred in admitting his pretrial confession without sua sponte evaluating whether there was independent evidence to corroborate the essential facts admitted therein and, second, that no such corroboration existed. But Appellant not only failed to object to the admission of his confession on the grounds of insufficient corroboration, he explicitly stated he had "[n]o objection" when the Government proffered his sworn statement. He also affirmatively agreed to its use in deliberations. Based both on the ordinary rules of waiver, *United States v. Campos*, 67 M.J. 330, 332–33 (C.A.A.F. 2009), and the specific dictates of M.R.E. 304(f)(1), Appellant waived his right to complain that his confession was inadmissible because it lacked corroboration.

On the one hand, we agree with Appellant that M.R.E. 304(c) reflects the common law's skepticism towards using out-of-court confessions and admissions to prove the elements of a crime. *See Smith v. United States*, 348 U.S. 147, 152–53 (1954); *Opper v. United States*, 348 U.S. 84, 89–90 (1954). Indeed, as a rule, "[a]n admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence *only if independent evidence . . .* has been admitted into evidence that corroborates the essential facts admitted to justify sufficiently an inference of their truth." M.R.E. 304(c)(1) (emphasis added) (amended by Exec. Order No. 13,730 (May 20, 2016), 81 Fed. Reg. 33,331, 33,350–51 (May 26, 2016)).

But M.R.E. 304(c) does not exist in a vacuum. First, as a general proposition of law, "no objection" constitutes an affirmative waiver of the right or admission at issue. *See Campos*, 67 M.J. at 332–33. Appellant was fully aware of the content of the statement, and he had numerous opportunities to contest its admission and use. Second, adding rule-based suspenders to the ordinary waiver belt, M.R.E. 304(f)(1) provides that any objection under M.R.E. 304, which broadly governs "Confessions and admissions," to the

admission of a confession shall be made *before* the submission of a plea, and that "[f]ailure to so move or object constitutes a waiver of the objection." M.R.E. 304(f)(1). By its terms, M.R.E. 304(f)(1) applies to objections based on a lack of corroboration under M.R.E. 304(c), and Appellant's claim was waived. *See also* R.C.M. 905(b)(3) (requiring suppression motions to be made prior to arraignment); R.C.M. 905(e) (providing that failure to raise an objection under subsection (b) "shall constitute waiver"); *cf. United States v. Ahern*, __ M.J. __ (6–7) (C.A.A.F. 2017). Furthermore, considering Appellant's waiver, we do not resolve the question whether the confession was in fact corroborated. *See Campos*, 67 M.J. at 332 (holding that a valid waiver leaves no error to correct on appeal).

Our reading of M.R.E. 304(f)(1) is informed by the underlying rationale of *United States v. Miller*, 31 M.J. at 252. In that case, this Court addressed the question whether the right to contest the voluntariness of a confession, under 304(a) and (e)(1), can be waived by failure to object, pursuant to M.R.E. 304(d)(2)(A), the predecessor of M.R.E. 304(f)(1). *Id.* at 249. Consistent with our resolution in this case, *Miller* concluded that the military judge was required to make findings about the issue of voluntariness "only when there has been some contest as to whether an accused's statement was voluntary or was preceded by the necessary warnings of his rights." *Id.* at 252. The Court noted that "[c]learly, [304(d)(2)(A)] intends to place *on the defense* the burden of complaining that a confession or admission is involuntary or was obtained without a warning to the accused of his rights." *Id.* at 251 (emphasis added). Thus, absent an objection or contest, the issue of voluntariness was waived. *Id.* at 252. We apply the same analysis to an objection under M.R.E. 304(c) related to corroboration; it is waived absent an objection. Thus, even giving no effect to his affirmative statements of waiver (i.e., "[n]o objection, sir"), Appellant waived the issue of corroboration in this case. *Miller*, 31 M.J. at 252; *cf. United States v. Maio*, 34 M.J. 215, 218 n.2, 219 n.3 (C.M.A. 1992) (noting that the accused failed to object at suppression hearing to admission of other statements used to corroborate his confession); *United States v. Melvin*, 26 M.J. 145, 147 (C.M.A. 1988); *United States v. Latour*, 75 M.J. 723, 727 (N-M. Ct. Crim. App. 2016) ("[W]e agree that [M.R.E.] 304(f)(1) applies to objections based on lack of corroboration . . . .").

## C. Additional Matters

We note that the ACCA neither identified the military judge's failure to rule on the admissibility of the M.R.E. 404(b) and 414 evidence, nor conducted its own analysis as to whether and how that evidence was admissible and could be used. Those issues should be addressed and resolved in the course of the ACCA's action on remand. *See United States v. Davis*, 65 M.J. 766, 771 (A. Ct. Crim. App. 2007) (conducting independent balancing under M.R.E. 414 and 403 where the military judge's error meant his analysis was entitled to no deference (citing *United States v. Berry*, 61 M.J. 91, 96 (C.A.A.F. 2005))).

## IV. DECISION

The decision of the United States Army Court of Criminal Appeals is set aside. The case is returned to the Judge Advocate General of the Army for remand to that court for further proceedings consistent with this opinion.