*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee

**v.**

### Michael J. GUINN, Staff Sergeant
United States Army, Appellant

### No. 19-0384
Crim. App. No. 20170500

Argued November 17, 2020—Decided May 10, 2021

Military Judge: Richard J. Henry

For Appellant: *Captain Alexander N. Hess* (argued); *Lieutenant Colonel Angela D. Swilley*, *Captain Catherine E. Godfrey*, *Captain Zachary A. Gray*, and *Jonathan F. Potter*, Esq. (on brief); *Lieutenant Colonel Tiffany D. Pond, Major Jack D. Einhorn,* and *Captain Benjamin Accinelli*.

For Appellee: *Captain Christopher T. Leighton* (argued); *Colonel Steven P. Haight, Lieutenant Colonel Wayne H. Williams*, and *Major Jonathan S. Reiner* (on brief); *Major Brett A. Cramer* and *Major Hannah E. Kaufman*.

Judge OHLSON delivered the opinion of the Court, in which Chief Judge STUCKY and Judges SPARKS and MAGGS, joined. Judge MAGGS filed a separate concurring opinion. Senior Judge RYAN filed a separate dissenting opinion.

————————

Judge OHLSON delivered the opinion of the Court.

## I. Overview

Following a child sex offense conviction, Appellant began serving a four-year sentence of confinement at Fort Leavenworth, Kansas. During his incarceration, a prison policy (since revised) prohibited child sex offenders from having contact with children unless they received an exception to the policy. After Appellant unsuccessfully complained to prison officials and the convening authority that the policy improperly deprived him of contact with his biological children, Appellant sought sentence relief from the United States Army Court of Criminal Appeals (CCA). Appellant argued that the prison policy violated his rights under Article 55, Uniform

Code of Military Justice (UCMJ), 10 U.S.C. § 855 (2012), and under the First, Fifth, and Eighth Amendments of the United States Constitution. The CCA concluded that the prison policy did not violate either Article 55 or the Eighth Amendment but specifically declined to address Appellant's First and Fifth Amendment claims stating that such claims are " 'unsuitable for an [Article 66, UCMJ, 10 U.S.C. § 866 (2012),] sentence appropriateness assessment.' " *United States v. Guinn*, No. ARMY 20170500, 2019 CCA LEXIS 143, at \*10, 2019 WL 1502512, at \*5 (A. Ct. Crim. App. Mar. 28, 2019) (unpublished) (alteration in original) (quoting *United States v. Jessie*, No. ARMY 20160187, 2018 CCA LEXIS 609, at \*13, 2018 WL 6892945, at \*5 (A. Ct. Crim. App. Dec. 28, 2018) (en banc)). This Court granted review to determine whether the CCA conducted a valid Article 66(c), UCMJ, review when it "failed to consider Appellant's First and Fifth Amendment claims even while entertaining his Eighth Amendment claims." We hold that applicable precedent from this Court requires the CCA to consider all of Appellant's constitutional claims.

## II. Procedural History

Contrary to his pleas, a panel with enlisted representation sitting as a general court-martial convicted Appellant of one specification of sexual assault of a child under the age of twelve in violation of Article 120b, UCMJ, 10 U.S.C. § 920b (2012).[1] The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for four years, a reduction to E-1, and forfeiture of all pay and allowances.

In September 2017, Appellant began to serve his prison sentence at the Joint Regional Confinement Facility (JRCF) at Fort Leavenworth, Kansas. At that time, inmates convicted of child sex offenses were subject to a JRCF policy that prohibited inmates from having direct or indirect written, telephonic, or in-person contact "with any children—to include their biological children—unless they receive[] an exception

---

[1] The panel acquitted Appellant of one specification of rape of a child in violation of Article 120b, UCMJ.

to [the] policy."[2] *Guinn*, 2019 CCA LEXIS 143, at *4, 2019 WL 1502512, at *2. A precondition for receiving an exception to the policy was that "the inmate had to admit guilt and complete a treatment program for sexual offenders." *Id.*, 2019 WL 1502512, at *2. In complaints to prison officials and the convening authority, Appellant repeatedly but unsuccessfully sought access to his biological children without admitting guilt to the offenses of which he was convicted.

In his appeal to the CCA, Appellant challenged "the conditions of his confinement" by alleging "the confinement visitation policy unlawfully increase[d] his sentence in violation of Article 55, UCMJ, and the First, Fifth, and Eighth Amendments [of the Constitution]." *Id.* at *1, *7, 2019 WL 1502512, at *1, *3. The CCA unanimously rejected the Article 55 and Eighth Amendment challenge. The lower court first noted that both Article 55 and the Eighth Amendment prohibit cruel and unusual punishment, and then correctly held that the first prong of a three-part test for determining whether such a punishment was imposed requires an appellant to demonstrate an impermissible "denial of necessities." *Id.* at *8, 2019 WL 1502512, at *4 (citing *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006)). The CCA concluded that the policy of depriving prisoners of contact with minors was not equivalent to policies denying prisoners of necessities such as food, sufficient housing, and protection from torture. The CCA reasoned that if "long term solitary confinement"—i.e., "the general denial of human contact"—did not violate the Eighth Amendment, then "the deprivation of contact with one's biological children" also would not constitute "a deprivation of a necessity." *Id.* at *9, 2019 WL 1502512, at *4. Moreover, in regard to the second prong of the *Lovett* test, the CCA determined that Appellant had "not shown a culpable state of mind on the part of prison officials" because there was "no punitive intent in the application of the policy." *Id.* at *10, 2019 WL

---

[2] It appears this prison policy was amended while Appellant was serving his sentence of confinement. *See Guinn v. McCarthy*, No. 1:19-cv-1358, 2020 U.S. Dist. LEXIS 122703, at *2, 2020 WL 3965006, at *1 (E.D. Va. July 13, 2020) (unpublished) (stating that Appellant "was prohibited from contacting his [three minor] children until the Visitation Policy was amended, some 18 months after he began his incarceration").

1502512, at *4. The CCA then ruled that it need not address the third prong in deciding that Appellant's claims under Article 55 and the Eighth Amendment must fail. *Id.,* 2019 WL 1502512, at *4.

In terms of his other constitutional claims, Appellant essentially argued that the prison policy violated his First Amendment right of freedom of association by denying him all contact with his children, and violated his Fifth Amendment privilege against self-incrimination by requiring him to admit to a criminal offense in exchange for communicating with those children. Appellant then argued that the CCA should reduce his sentence because his confinement conditions violated the Constitution.

A split CCA opined that Appellant's First and Fifth Amendment claims were "unsuitable" for an Article 66(c), UCMJ, sentence appropriateness assessment. *Id.*, 2019 WL 1502512, at *5 (citation omitted) (internal quotation marks omitted). The CCA majority determined that "another court"—that is, an Article III court empowered to resolve claims for injunctive and declaratory relief—was "better positioned to address" these complaints. *Id.* at *11, 2019 WL 1502512, at *5. However, citing the CCA's Article 66(c) requirement to review sentences, the dissenting CCA judge concluded that the lower court could only fulfill its statutory mandate by analyzing post-trial confinement conditions that potentially violated any constitutional right of a servicemember. *Id.* at *12–13, 2019 WL 1502512, at *5–6 (Schasberger, J., dissenting in part). Following this split decision, the CCA granted Appellant's motion for reconsideration but affirmed the original opinion and the dissent.

### III. Issues Presented

This Court granted review on the following issues:

> I. Whether the Army court conducted a valid Article 66 review when it failed to consider Appellant's First and Fifth Amendment claims even while entertaining his Eighth Amendment claims.
>
> II. Whether Appellant's constitutional rights were violated by a confinement facility policy that barred him from all forms of communication with his minor children without an individualized assessment demonstrating that an absolute bar was necessary.

*United States v. Guinn*, 79 M.J. 267 (C.A.A.F. 2019) (order granting review). We ordered briefs and oral argument only with respect to Issue I.

## IV. Standard of Review

This Court recognizes a CCA's "broad discretion in conducting its Article 66(c) review." *United States v. Swift*, 76 M.J. 210, 216 (C.A.A.F. 2017). Thus, a CCA's actions under Article 66(c) are "generally review[ed] … for an abuse of discretion," *United States v. Atchak*, 75 M.J. 193, 196 (C.A.A.F. 2016), and this includes the review of a CCA's sentence appropriateness decisions, *United States v. Roach*, 69 M.J. 17, 21 (C.A.A.F. 2010). Importantly, however, this Court conducts a de novo review with respect to the scope and meaning of the CCA's Article 66(c) authority. *United States v. Gay*, 75 M.J. 264, 267 (C.A.A.F. 2016). Therefore, this de novo review standard is applied to the issue presented in the instant case.

## V. Analysis

The applicable version of Article 66(c), UCMJ, states as follows:

> In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

The plain language of the statute shows that CCAs have two responsibilities that are of particular relevance to the issue before us. The first is to ensure that the sentence imposed on an appellant is "correct in law." *Id.* As an example of this mandate, CCAs are required to ensure that the adjudged and approved sentence in a particular case does not exceed the maximum penalty authorized under the applicable punitive article. *See, e.g.*, *United States v. Datavs*, 70 M.J. 595, 604 (A.F. Ct. Crim. App. 2011), *aff'd on other grounds by* 71 M.J. 420 (C.A.A.F. 2012). The second relevant CCA responsibility

under Article 66 is to determine whether the sentence imposed on an appellant "should be approved." As an example, CCAs must determine the appropriateness of an adjudged and approved sentence in light of the underlying facts adduced at trial, to include all extenuating and mitigating circumstances. *See United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982).

Beyond these more obvious implications of the statutory language, this Court has further defined the scope of a CCA's responsibilities under Article 66(c) through our case law. Specifically, when determining whether an imposed sentence is "correct in law" and "should be approved," we have held that CCAs are empowered to grant sentence relief based on *post-trial* confinement conditions. As can be seen directly below, the nature of this authority has been laid out in three key cases.

In *United States v. White*, 54 M.J. 469 (C.A.A.F. 2001), the appellant complained to this Court of his treatment while in confinement. We held as follows:

> Our statutory authority [under Article 67(c), UCMJ, 10 U.S.C. § 867(c),] is to act "with respect to the findings and sentence." This grant of authority encompasses more than authority merely to affirm or set aside a sentence. It also includes authority to ensure that the severity of the adjudged and approved sentence has not been unlawfully increased by prison officials, and to ensure that the sentence is executed in a manner consistent with Article 55[,UCMJ,] and the Constitution.

*Id.* at 472. It is clear from this passage (as well as from our opinion in *United States v. Erby*, 54 M.J. 476 (C.A.A.F. 2001), which is addressed immediately below), that the *White* Court concluded that under Article 67(c), UCMJ, we have two distinct responsibilities: (1) to ensure that the severity of the adjudged and approved sentence has not been unlawfully increased by prison officials;[3] and (2) to ensure that the

---

[3] Our opinion in *United States v. Pena*, 64 M.J. 259, 265–66 (C.A.A.F. 2007), provides some guidance for determining whether a sentence has been unlawfully increased. That opinion indicates that a prison policy will increase the severity of a sentence if the

sentence is executed in a manner consistent with Article 55, UCMJ, and the Eighth Amendment.[4]

On the same day that *White* was decided, this Court also handed down its opinion in *Erby*, 54 M.J. at 476. The appellant in that case also complained of his treatment while in confinement. In *Erby*, however, rather than addressing the authority of *this* Court under Article 67(c) as we did in *White*, we instead addressed the authority of the Courts of Criminal Appeals under Article 66, UCMJ. *Erby*, 54 M.J. at 476–77. Specifically, in interpreting the relevant portions of Article 66(c), UCMJ, our Court opined as follows:

> [In *White* we] held that our authority under Article 67(c) "includes authority to ensure that the severity of the adjudged and approved sentence has not been unlawfully increased by prison officials[.]"
>
> In addition to its duty and authority to review sentence appropriateness, a Court of Criminal Appeals *also* has *the duty* and authority under Article 66(c) *to determine whether the sentence is correct "in law." This authority under Article 66(c) is virtually identical to our Court's authority to review the sentence under Article 67(c).* Accordingly, we hold that the Court of Criminal Appeals erred when it concluded that it lacked authority to review appellant's claims.

*Id.* at 478 (second alteration in original) (emphasis added) (citation omitted). As can be seen then, two decades ago this Court held that a Court of Criminal Appeals not only has the authority but also *the duty* to ensure that the severity of an adjudged and approved sentence has not been *unlawfully increased by prison officials*. And as recently as 2016, this Court

---

policy "constitute[s] 'punishment' within the meaning of the criminal law" and that "[a]s a general matter, the collateral administrative consequences of a sentence … do not constitute punishment for purposes of the criminal law." *Id.* at 265.

[4] In *White*, our reference to "the Constitution" was to the Eighth Amendment, not more generally to other constitutional provisions. 54 M.J. at 472 ("expressly hold[ing] that we have jurisdiction under Article 67(c) to determine on direct appeal if the adjudged and approved sentence is being executed in a manner that offends *the Eighth Amendment* or Article 55" (emphasis added)); *see also Erby*, 54 M.J. at 478 (describing the *White* holding).

reaffirmed that the Courts of Criminal Appeals have the unique authority and responsibility to provide sentence appropriateness relief for post-trial confinement conditions in *Gay*, 75 M.J. 264.

In *Gay*, the appellant complained to the CCA of his treatment while in confinement. He specifically cited the fact that he was placed in solitary confinement in order to segregate him from foreign nationals. In granting the appellant relief, the CCA held as follows:

> Under our broad Article 66(c), UCMJ, authority, we retain responsibility in each case we review to determine whether the adjudged and approved sentence is appropriate. Under Article 66(c), UCMJ, *our sentence appropriateness authority* is to be based on our review of the "entire record," which *necessarily includes the appellant's allegation of the conditions of his post-trial confinement*. While we may not engage in acts of clemency, we hold that we may consider post-trial confinement conditions as part of our overall sentence appropriateness determination, *even when those allegations do not rise to the level of an Eighth Amendment or Article 55, UCMJ, violation.*

*Id.* at 266 (emphasis added) (quoting *United States v. Gay*, 74 M.J. 736, 743 (A.F. Ct. Crim. App. 2015)). In a unanimous opinion, this Court ratified the CCA's interpretation of the scope of Article 66. Specifically, we held that "[t]he CCA did not abuse its discretion when it exercised its Article 66(c) sentence reassessment authority for post-trial confinement conditions despite its conclusion *that the conditions did not rise to a violation of the Eighth Amendment or Article 55.*" *Id.* at 269 (emphasis added).

Three key and interrelated points can be discerned from our precedents. First, if a CCA *may* exercise its Article 66(c) authority in order to grant relief for post-trial confinement conditions that do not rise to the level of cruel and unusual punishment, then in order for it to fully perform its duties under Article 66(c) a CCA *must at least consider* such claims in order to determine whether an appellant is indeed entitled to sentence appropriateness relief. Second, if an appellant claims that post-trial confinement conditions unlawfully increased the severity of the sentence, a CCA *must consider* whether the sentence is correct in law. And third, Eighth

Amendment/Article 55 claims are not a prerequisite for relief, and therefore are not a prerequisite for mandated consideration of an appellant's Article 66(c) claim.[5]

In the instant case, Appellant argued before the CCA that the JRCF prison policy unlawfully increased his sentence. Specifically, he argued that the prison policy, which effectively prevented him from having any direct or indirect contact with his biological children, violated his constitutional rights under the First and Fifth Amendments. And yet, the CCA refused to even consider Appellant's First and Fifth Amendment claims, asserting that such claims are "unsuitable" for an Article 66(c), UCMJ, review. *Guinn*, 2019 CCA LEXIS 143, at *10, 2019 WL 1502512, at *5 (citation omitted) (internal quotation marks omitted).

However, as Appellant notes, by not "resolving [A]ppellant's constitutional claims, the Army Court could not conclude his sentence was 'correct in law[,]' let alone fulfill its separate duty to meaningfully determine whether that sentence 'should be approved' in the event this was error." Brief for Appellant at 8, *United States v. Guinn*, No. 19-0384 (C.A.A.F. July 22, 2020) (second alteration in original) (quoting Article 66(c), UCMJ). In other words, Appellant argues that the CCA improperly declined "to ensure that the severity of the adjudged and approved sentence [was] not … unlawfully increased by prison officials," *Pena*, 64 M.J. at 265 (internal quotation marks omitted) (quoting *White*, 54 M.J. at 472), and improperly declined to determine whether the confinement conditions caused Appellant's length of imprisonment to no longer be "appropriate." Based on this Court's precedents, we concur with this analysis.

The Government makes a number of counter arguments, each of which is addressed below.

First, the Government argues that, besides Eighth Amendment claims, there is no case law that specifically re-

---

[5] And importantly, we note that "[a] *complete* Article 66, UCMJ, review is a 'substantial right' of an accused," and without this complete review, an appellant suffers material prejudice to a substantial right. *Swift*, 76 M.J. at 216 (emphasis added) (quoting *United States v. Jenkins*, 60 M.J. 27, 30 (C.A.A.F. 2004)).

quires CCAs to review whether prison policies violate an appellant's constitutional rights. Therefore, the Government avers, Appellant is improperly advocating for "limitless" mandatory review of constitutional prison complaints. Brief for Appellee at 8, *United States v. Guinn*, No. 19-0384 (C.A.A.F. Aug. 20, 2020). However, as explained above, Article 66(c) *requires* CCAs to review whether a sentence is correct in law. *Swift*, 76 M.J. at 216. And importantly, this Court has held that a prison policy may increase the severity of a sentence thereby rendering the sentence incorrect in law. *See Pena*, 64 M.J. at 265; *Erby* 54 M.J. at 478. Therefore, because a CCA has a statutory duty to review the legality of an appellant's sentence, and because we have held that a prison policy may affect an appellant's sentence, a CCA cannot ignore an appellant's claims that a prison policy rendered an approved sentence incorrect in law even if that claim does not invoke the protections afforded under the Eighth Amendment. *See Swift*, 76 M.J. at 216; *Erby* 54 M.J. at 478.

Moreover, in regard to whether a sentence "should be approved," we readily agree with the proposition that CCAs do not have "unlimited authority … to grant sentence appropriateness relief for any conditions of post-trial confinement of which they disapprove." *Gay*, 75 M.J. at 269. However, these courts do have the authority "to grant sentence appropriateness relief" when the prison policy "was based on a legal deficiency in the post-trial process." *Id.* As Appellant's brief observes, "[t]he CCAs have significant discretion in *how* they resolve sentence appropriateness claims, but they have a duty to do so one way or another." Brief for Appellant at 13. As we stated in *United States v. Baier*, a CCA "*must* determine whether it finds the sentence to be appropriate," 60 M.J. 382, 384 (C.A.A.F. 2005) (emphasis added), but then it is within its "sound discretion" to determine "*how* that … sentence appropriateness review should be *resolved*," *id.* at 385 (emphasis added). Therefore, because the CCAs *are required* to review whether a sentence is appropriate, they must address an appellant's claim that a specific prison policy contained a legal

deficiency that rendered the sentence inappropriate.[6] *Swift*, 76 M.J. at 216.

Second, the Government argues that there is not a legal deficiency in Appellant's sentence because the prison policy at issue in this case does not fit within "carve-out situations wherein prison officials deviated from a policy in order to single out an inmate in a manner resembling increased punishment." Brief for Appellee at 21. This certainly is an argument that the Government may make to the CCA in the first instance to explain why Appellant is not entitled to sentence relief on the grounds that the sentence is incorrect in law. *See Pena*, 64 M.J. at 265. However, the CCA has not even considered this argument because it wrongly believed that it could simply ignore Appellant's claim that the prison conditions increased the severity of his sentence. But according to our case law, the CCA did not have such discretion. *See Swift*, 76 M.J. at 216.

Third, the Government characterizes Appellant's request as an attempt to meddle in prison policy and suggests that the CCA is not properly positioned to evaluate prison policies. This is an extremely important point and one that we take seriously. We are acutely mindful of the fact that courts should show deference to prison administrators because "the 'problems of prisons in America are complex and intractable,' and because courts are particularly 'ill equipped' to deal with these problems." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) (citation omitted). However, as made clear above, our case law requires CCAs to at least *consider* such prison policy claims in order to determine whether the sentence is correct in law or is appropriate. *See Gay*, 75 M.J. at 269; *Erby*, 54 M.J. at

---

[6] At the CCA Appellant requested "day-for-day credit from the day of his initial confinement until [the CCA] issue[d] its opinion in [his] case against his sentence by reducing the … approved sentence by that same period of time." Brief for Appellant at 40–41, *United States v. Guinn*, No. ARMY 20170500 (A. Ct. Crim. App. Aug. 21, 2018). In other contexts, this Court has stated that "the question of what relief is due to remedy a violation, if any, requires a contextual judgment, rather than the pro forma application of formulaic rules." *United States v. Zarbatany*, 70 M.J. 169, 176 (C.A.A.F. 2011). Therefore, this question of meaningful relief will be for the CCA to address on remand if that court finds a violation.

478. Upon engaging in that required consideration, we have every confidence that the CCAs will wisely show the appropriate deference to prison policies in determining whether relief is warranted. As we emphasized in *Swift*, 76 M.J. at 216, it remains within the "broad discretion" of the CCA to determine whether relief is actually warranted in a specific case. *See also Baier*, 60 M.J. at 385.

Fourth, the Government argues that granting Appellant sentence relief would lead to an "absurd result" because the prison policy that was designed to keep Appellant away from children for a longer period of time would actually result in him getting access to children sooner. However, this argument is irrelevant because it addresses an issue that is not before this Court. The question before us is not whether Appellant is entitled to sentence relief but rather whether the CCA properly declined to consider Appellant's constitutional challenges to the prison policy. The Government may make its "absurd result" argument before the CCA in explaining why no sentence relief is warranted in this case.

In addition to these arguments by the Government, the CCA provided an additional reason in its reconsideration order why it concluded that an Article 66(c) review of Appellant's First and Fifth Amendment claims was inappropriate. It "believ[ed] that another court [was] better positioned to address … [these] claims." However, Appellant brought these claims when seeking sentence relief under the CCA's unique Article 66(c) authority. The CCA is the only court that can address the First and Fifth Amendment claims in this context, and its mere belief that another court could better address Appellant's claims did not relieve the CCA of its statutory responsibilities under Article 66(c). We further note that when Appellant attempted to have a federal district court review the JRCF policy, that court said:

> The Court cannot accept the Army [CCA's] statement that a federal court would be better suited to hear [Appellant's] case as means of circumventing the well-established rules of exhaustion, particularly where [Appellant] has successfully obtained review by the Court of Appeals for the Armed Forces and his case there is still pending…. [Therefore], he has failed to exhaust his military remedies and this

> Court's review is not appropriate, even assuming it
> had jurisdiction over the matter.

*Guinn*, 2020 U.S. Dist. LEXIS 122703, at \*7, 2020 WL 3965006, at \*3.

Finally, we seek to address remaining issues this opinion may generate. To begin with, we fully recognize that CCAs "are not a clearinghouse for post-trial confinement complaints or grievances," and "[o]nly in very rare circumstances" will sentence relief be granted "when there is no violation of the Eighth Amendment or Article 55, UCMJ." *United States v. Ferrando*, 77 M.J. 506, 517 (A.F. Ct. Crim. App. 2017).

Further, in terms of whether a sentence "should be approved" a CCA's authority to grant relief is not without limits. As we stated in *United States v. Nerad*, "Article 66(c), UCMJ, empowers the CCAs to 'do justice,' with reference to some legal standard, but does not grant the CCAs the ability to 'grant mercy.' " 69 M.J. 138, 146 (C.A.A.F. 2010) (quoting *United States v. Boone*, 49 M.J. 187, 192 (C.A.A.F. 1998)).

Next, it still remains the case that "[a]n appellant who asks [a CCA] to review prison conditions … must establish" the following: (1) a record demonstrating exhaustion of administrative remedies (i.e., exhaustion of the prisoner-grievance system and a petition for relief under Article 138, UCMJ, 10 U.S.C. § 938 (2012), except in "unusual or egregious circumstances that would justify [the] failure" to exhaust); (2) "a clear record demonstrating … the jurisdictional basis for [the CCA's] action"; and (3) "a clear record demonstrating … the legal deficiency in administration of the prison." *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997); *cf. Erby*, 54 M.J. at 478.

Additionally, a CCA's responsibilities under Article 66(c) cannot properly be viewed as being unduly onerous. Parallels can be drawn between Article 66(c) claims and claims made pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). *Grostefon* requires a CCA to "acknowledge that it has considered … issues enumerated by the accused and its disposition of them," even if those issues seem facially frivolous. *Id*. at 436. However, as long as a CCA indicates that it has considered an issue raised by an appellant, a single sentence

disposition is sufficient. *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

Lastly, it certainly may be argued that this Court's precedents regarding the scope of a CCA's responsibilities under Article 66(c) are not properly predicated on the plain language of that statute. However, when asked at oral argument, the Government specifically denied any interest in overturning this Court's prior case law on this point. Therefore, we do not address this issue in this opinion. As a consequence, we hold that under our precedents, the CCA had an Article 66(c) duty to determine whether Appellant's approved sentence, as executed, was correct in law and was appropriate. Because the CCA improperly declined to conduct this required review, "Appellant did not receive a proper legal review under Article 66(c) [and] the remedy is a remand to the Court of Criminal Appeals for a proper review" of his sentence. *United States v. Holt*, 58 M.J. 227, 233 (C.A.A.F. 2003).[7]

## VI. Conclusion

In light of the precedents of this Court, we answer Issue I in the affirmative and hold that the CCA erred by failing to conduct a valid Article 66(c), UCMJ, review when it refused to consider whether Appellant's First and Fifth Amendment claims entitled him to sentence relief. Because of our disposition of this matter, we need not reach Issue II in this case.

## VII. Judgment

We reverse the decision of the United States Army Court of Criminal Appeals as to the sentence and remand this case to the lower court so that it may conduct a proper Article

---

[7] The dissent misapprehends the majority's position. As is readily apparent from the face of our opinion, we merely hold that *our precedents* require the CCA to *consider* all of Appellant's constitutional claims to determine whether his sentence is correct in law or is appropriate. We make no new law here, and we do not mandate a remedy for Appellant's claims. And importantly, we do not address the merits of our prior case law for the simple reason that the Government specifically disavowed any interest in having this Court revisit our applicable precedents. In the future if a party petitions us to reconsider the meaning of the plain language of Article 66(c), UCMJ, we will reevaluate our precedents after both parties have an appropriate opportunity to fully brief and argue that issue.

66(c), UCMJ, 10 U.S.C. § 866(c) (2012), review of Appellant's sentence.

Judge MAGGS, concurring.

I agree with the Court's decision that our precedents require the United States Army Court of Criminal Appeals (ACCA) to consider all of Appellant's constitutional claims. As the Court correctly reasons, we previously have held that a Court of Criminal Appeals (CCA) must consider an appellant's claims that post-trial confinement conditions have made his sentence either inappropriate or legally incorrect. In *United States v. Erby*, 54 M.J. 476, 478 (C.A.A.F. 2001), the Court held that a CCA erred in not considering the appellant's claims that post-trial confinement conditions amounted to cruel and unusual punishment. We determined that review of these claims was required by Article 66(c), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(c) (2012), which imposes on the CCAs the "duty and authority to review sentence appropriateness" and to "determine whether the sentence is correct 'in law.'" *Id.* (quoting Article 66(c), UCMJ). We have not limited the duty of review to situations in which an appellant is claiming that confinement conditions constitute cruel and unusual punishment. In *United States v. Gay*, the Court held that "[t]he CCA did not abuse its discretion when it exercised its Article 66(c) sentence reassessment authority for post-trial confinement conditions despite its conclusion that the conditions did not rise to a violation of the Eighth Amendment or Article 55." 75 M.J. 264, 269 (C.A.A.F. 2016). I see no relevant difference between this case and our precedents.

I write separately to address in more depth two important subjects that the Court briefly covers in its opinion. The first concerns the soundness of our precedents in this area. "[I]t certainly may be argued," the Court correctly states, "that this Court's precedents regarding the scope of a CCA's responsibilities under Article 66(c) are not properly predicated on the plain language of that statute." *United States v. Guinn*, __ M.J. __, __ (14) (C.A.A.F. 2021). The initial sentence of Article 66(c), UCMJ, provides: "In a case referred to it, the Court of Criminal Appeals *may act only* with respect to the findings and sentence *as approved by the convening authority*." (Emphasis added.) In *Erby* and *Gay*, as in this case, the appellants were not complaining about the legality or appropriateness of a sentence *as approved by the convening authority*. They were instead complaining about post-trial confinement conditions

that were not in any way part of the approved sentence. Accordingly, I agree with the Court that it may be argued, from the plain meaning of its text, that Article 66(c), UCMJ, does not give a CCA jurisdiction to address post-trial confinement conditions that are not part of the approved sentence. The result of this apparent departure from the plain meaning may be a practice at variance with that of other federal appellate courts, which do not consider complaints about confinement conditions on direct appeal in criminal cases. *See, e.g., United States v. Carmichael*, 343 F.3d 756, 761 (5th Cir. 2003) (refusing to consider complaints from two appellants about the collection of DNA samples by the Bureau of Prisons because the collection was "not part of appellants' sentence, but is rather a prison condition that must be challenged through a separate civil action after exhaustion of administrative remedies").

The second subject concerns the scope of our decision today. The Court properly declines to question the validity of our precedents *in this case* because "the Government specifically denied any interest in overturning this Court's prior case law on this point." *Guinn*, __ M.J. at __ (14). This conclusion follows from the principle of "party presentation," which generally requires the parties to raise an issue before a court may consider it. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1581 (2020) (holding that a court of appeals erred when it raised, and invited briefing on, an issue the parties had not contested because "no extraordinary circumstances justified the [court's] takeover of the appeal"). But a party could ask this Court to reconsider our precedents in a future case. If that happened, we would evaluate the arguments on both sides at that time. *See United States v. Blanks*, 77 M.J. 239, 242 (C.A.A.F. 2018) (explaining that "[w]e consider the following factors in evaluating the application of stare decisis: whether the prior decision is unworkable or poorly reasoned; any intervening events; the reasonable expectations of servicemembers; and the risk of undermining public confidence in the law") (internal quotation marks omitted) (citation omitted).

Senior Judge RYAN, dissenting

The majority opinion, however well intentioned, ignores the fact that a condition of confinement that does not constitute—and is not claimed to constitute—punishment simply cannot "increase the sentence," let alone the severity of the sentence. Such a condition therefore has nothing at all to do with whether a sentence is correct in law, and is thus, as the United States Army Court of Criminal Appeals correctly held, "unsuitable for a sentence appropriateness assessment." *United States v. Guinn*, No. ARMY 20170500, 2019 CCA LEXIS 143, at *10, 2019 WL 1502512, at *5 (A. Ct. Crim. App. Mar. 28, 2019) (unpublished). The Court nonetheless, and to my mind inexplicably, insists on mandatory appellate review of any and all prisoner complaints alleging a constitutional violation based on the application of any and all administrative prison policies, even where, as in this case, the policy as related to the remaining constitutional claims is not even alleged to constitute punishment.[1] This decision has no basis in the text of Article 66(c), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(c) (2012), unnecessarily extends our precedent, and requires the lower courts to entangle themselves in an assessment of nonpunitive prison administrative decisions, in contravention of Supreme Court precedent.

Article 66(c), UCMJ, states that the Courts of Criminal Appeals (CCAs) "may act only with respect to the findings and sentence." The plain text of Article 66(c), UCMJ, thus limits judicial review to the findings and sentence adjudged by the court-martial. Nonetheless, this Court has concluded that an

---

[1] The majority characterizes Appellant's claims as follows:

> In the instant case, Appellant argued before the CCA that the JRCF prison policy unlawfully *increased his sentence*. Specifically, he argued that the prison policy, which effectively prevented him from having any direct or indirect contact with his biological children [unless he receives an exception, which requires that "the inmate had to admit guilt and complete a treatment program for sexual offenders"] violated his constitutional rights under the First and Fifth Amendments.

*United States v. Guinn*, __ M.J. __, __ (9) (C.A.A.F. 2021) (emphasis added).

allegation that a post-trial condition of confinement that violates the Eighth Amendment, U.S. Const. amend. VIII, or Article 55, UCMJ, 10 U.S.C. § 855, prohibitions against cruel or/and unusual punishment could render the sentence legally deficient, and thus triggers Article 66(c) review and possible sentence relief. *See United States v. White*, 54 M.J. 469 (C.A.A.F. 2001) (considering Eighth Amendment and Article 55, UCMJ, challenge for harassment from a prison guard); *United States v. Erby*, 54 M.J. 476 (C.A.A.F. 2001) (same); *United States v. Pena*, 64 M.J. 259 (C.A.A.F. 2007) (evaluating Eighth Amendment challenge to the conditions of a Mandatory Supervised Release Program). And it has permitted relief even where a post-trial condition of confinement did not rise to the level of an Eighth Amendment or Article 55, UCMJ, violation, in a circumstance where what is historically considered punishment—solitary confinement, *see In re Medley*, 134 U.S. 160, 171 (1890)—was imposed not to further any penological interest of the prison, but rather to avoid violating the Article 12, UCMJ, 10 U.S.C. § 812, prohibition on confinement of members of the armed forces with foreign nationals detained under the law of war. *United States v. Gay*, 75 M.J. 264, 265 (C.A.A.F. 2016). *Cf. Turner v. Safley*, 482 U.S. 78, 98 (1987) (disapproving a prison regulation that did not relate to a penological interest).

But all of the above cases at least arguably constitute increased or otherwise unlawful punishment under Supreme Court precedent and the Constitution. *Cf. Smith v. Doe*, 538 U.S. 84, 92 (2003) (stating that the initial determinative question of whether a penal restriction violates the Ex Post Facto Clause of the U.S. Const., art. I, § 10, cl. 1., is whether the restriction was intended to impose punishment). Rather than the broad "legally deficient" standard that the majority relies upon for its extra-statutory result, the actual *context* of these cases is far more narrow—and tied in fact to punishment.

Consistent with that background principle, we recognized in *Pena* that we could review a Mandatory Supervised Release program *only* to determine whether the condition at issue: "(1) constituted cruel or unusual punishment or otherwise violated an express prohibition in the UCMJ; (2) unlawfully increased Appellant's punishment; or (3) rendered his guilty plea improvident." *Pena*, 64 M.J. at 264. As that

case made clear, collateral administrative consequences of a sentence—which includes such things as sex offender registration, *Smith*, 538 U.S. at 97–99, and limits on seeing children, *see Overton v. Bazzetta*, 539 U.S. 126, 133 (2003)— "do not constitute punishment for purposes of the criminal law." *Pena*, 64 M.J. at 265. Neither do other restrictions on liberty attendant upon incarceration that do not amount to punishment. *Overton*, 539 U.S. at 131 (recognizing that "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner").

Today's decision mandates appellate review of a clearly nonpunitive prison regulation that is not even alleged to constitute punishment, *Guinn*, __ M.J. at __ (2), is outside the statutory authority of either this Court or the CCAs, is a clear expansion of our precedent, and necessarily entangles the CCAs in precisely the minutia of prison administration that every other court in the country avoids.[2]

And to be absolutely clear, the neutrally applied prison policy in question in this case is not only not part of the adjudicated and adjudged findings and sentence, it is not punishment at all. As the CCA already held, there was no Eighth Amendment violation. *See Guinn*, 2019 CCA LEXIS 143, at \*9–10, 2019 WL 1502512, at \*4. Nor is there a single precedent supporting the notion that the policy in question in this case—that incarcerated child sex offenders cannot have contact with children—is punishment under any other test.

---

[2] The Supreme Court has clarified, on multiple occasions, that courts should leave prison administration to prison administrators. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"); *Overton*, 539 U.S. at 132 (courts "accord substantial deference to the professional judgment of prison administrators"); *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) (courts should show deference to prison administrators because "the 'problems of prisons in America are complex and intractable,' and because courts are particularly 'ill equipped' to deal with these problems") (quoting *Procunier v. Martinez*, 416 U.S. 396, 404–05 (1974)); *Beard v. Banks*, 548 U.S. 521, 536 (2006) (Thomas, J., concurring) ("Judicial scrutiny of prison regulations is an endeavor fraught with peril.").

*Cf. Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963). The fact that Appellant, a convicted child sex offender, was not permitted to see his children in accordance with extant prison regulations "serves a legitimate, nonpunitive governmental objective," *United States v. Guardado*, 79 M.J. 301, 304 (C.A.A.F. 2020) (*citing Howell v. United States*, 75 M.J. 386, 393 (C.A.A.F. 2016)), has not been historically regarded as punishment, *cf. Kansas v. Hendricks*, 521 U.S. 346, 366 (1997), and does not constitute a condition of confinement cognizable by either this Court or the CCA under the test utilized in *Pena. Pena*, 64 M.J. at 264. In fact, Appellant does not claim, and the majority does not hold, that the regulations constitute punishment—just that nonpunishment framed as an alleged constitutional violation can somehow potentially increase the sentence or render it unlawful and thus must be reviewed by the CCAs as part of their Article 66(c), UCMJ, review. None of our precedents must be read so broadly as to require that result.

Prison inmates in every legal system in this country routinely allege constitutional violations based on "conditions of confinement" grounded in routine prison policies. These civil claims are not based on criminal law or criminal procedure, the sole matters over which the military justice system has jurisdiction. The insistence that the CCAs, in order to fulfill their Article 66(c), UCMJ, duties must review essentially *civil claims* for relief from alleged constitutional violations based on prison policies that are filed as *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), or 42 U.S.C. § 1983 suits by every other prisoner in the country is inexplicable. The CCAs have much to do, and we should not unnecessarily add to their statutory burden.

## Conclusion

While the Government did not ask us to revisit our precedents, it surely did not ask us to go further down our extra-statutory path. Yet it is incontrovertible that the majority opinion unnecessarily expands the previous holdings of this Court, and does in fact create a requirement that the CCAs engage in "limitless mandatory review of constitutional prison complaints." *Guinn*, __ M.J. at __ (10) (citing Brief for Appellee at 8) (internal quotation marks omitted). Because the prison regulation in question is neither punishment

under any known test nor even claimed to be punishment, it simply does not increase the sentence and I do not think the CCA can, let alone must, consider Appellant's remaining constitutional claims in conducting its Article 66(c), UCMJ, review. "A demonstrably incorrect judicial decision . . . is tantamount to *making* law, and . . . both disregards the supremacy of the Constitution and perpetuates a usurpation of the legislative power." *Gamble v. United States*, 139 S. Ct. 1960, 1984 (2019) (Thomas, J., concurring). I respectfully dissent.